Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

(*Additional Counsel on Signature Page*)

United States District Court
Eastern District of New York                                    1:19-cv-05745-EK-ST

| | |
|---|---|
| Steve Gensberg, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | First Amended Complaint |
| Aldi Inc., | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Aldi Inc. ("defendant") manufactures, distributes, markets, labels and sells vanilla soymilk purporting to be flavored only with vanilla and not containing artificial flavors under the Simply Nature brand ("Product").

2.     The Product is available to consumers from defendant's Aldi grocery stores – over one thousand across fifty (50) states and is sold in sizes including cartons of 64 OZ (1.89L).

3.     The relevant front label representations include "Vanilla," "Soymilk," "Organic" and "6g Soy Powdered Protein."



4.      The representations are misleading because although the characterizing flavor is represented as vanilla, its flavor is not exclusively from vanilla and contains artificial flavors.

I.      Consumers Prefer Products Without Artificial Flavors

5.      62% of consumers surveyed by Nielsen say they try to avoid artificial flavors.[1]

6.      Another study by New Hope Network concludes that "71% of consumers today are

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.

avoiding artificial flavors."[2]

7.  Label Insight, a marketing company focused on consumer products, determined that 76% of consumers avoid products with artificial flavors.[3]

8.  The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla,

9.  Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[4]

10.  Vanilla's unique flavor and aroma is due to at least 200 compounds scientists have identified.[5]

11.  These include volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."

12.  The non-volatile constituents include "tannins, polyphenols, free amino acids and resins."

13.  Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[6]

14.  During the era of the "Pure Food Laws," "the widespread and exceedingly serious

---

[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[4] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.
[5] Arun K. Sinha et al., A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.
[6] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

adulteration of vanilla extracts that are now labeled 'pure'…deprive[d] the consumer of value the product is represented to have, and for which the consumer pays.[7]

15.   These practices were chronicled in Notices of Judgment issued by the Department of Agriculture against manufacturers who passed off imitation vanilla products:

> Misbranding was alleged for the further reason that the product was labeled and branded so as to deceive and mislead the purchaser thereof, in that said label was calculated and intended to create the impression and belief in the mind of the purchaser that the product was a genuine vanilla extract, whereas, in fact, it was a mixture of vanilla extract, vanillin, and coumarin, artificially colored with caramel.

> Notice of Judgment No. 2241, Adulteration and Misbranding of…Vanilla Extract, United States Department of Agriculture, W. M. Hays, Acting Secretary, Washington, D.C., January 23, 1913.

16.   The vanilla standards were intended to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[8]

17.   Vanilla products are the only flavorings subject to standards of identity.  *See* 21 C.F.R. Part 169 ("Food dressings and flavorings"); 21 C.F.R. §169.3 ("Definitions"); 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla products); *see also* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity and/or standards of quality, and tolerances for food and food products as published in title 21 of the Code of Federal Regulations…21 CFR part 169, containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606.") (italics in original).[9]

---

[7] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA (the FDA stated, "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards").

[8] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.

[9] 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.

18.    Re-creating the complexity and richness of "vanilla flavor" provided by vanilla beans is a task science has been unable to duplicate, which is why consumers are willing to pay more for products labeled solely with the term "Vanilla."

19.    Consumers expect the Product's flavor to be supplied only from the characterizing food ingredient of vanilla beans because they are accustomed to seeing labels with terms such as "flavored," "artificial flavors" and "with other natural flavors." *See* 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor").

20.    If a label "makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means… such flavor shall be considered the characterizing flavor." 21 C.F.R. § 101.22(i)(1).

21.    A product's characterizing flavor is required to be part of the product's common or usual name so consumers will not be misled. *See* 21 C.F.R. § 102.5(a).

22.    Federal regulations require that a food which is not subject to a standard of identity is required to bear a "common or usual name of a food" which "accurately identif[ies] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." *See* 21 C.F.R. § 102.5(a).

23.    Due to the common practice of using undisclosed artificial vanilla flavors in products labeled "vanilla," standards of identity for vanilla products were established to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[10] *See* 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla

---

[10] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.

products); *see also* 1 NYCRR § 250.1(a)(17) (adopting "standards of identity and/or standards of quality, and tolerances for food and food products as published in…21 CFR part 169").[11]

24.     Despite the front label of "Vanilla," the Product contains artificial flavors and non-vanilla flavors, which provide its vanilla taste, in contrast to the expectation that all of its vanilla taste was provided by vanilla beans. *See* 21 C.F.R. § 101.22(i)(1)(i) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'"); *see also* 1 NYCRR 259.1(a)(3) contained in Section 259.1 ("Packaging and labeling of food.") (adopting Part 101 of title 21).

25.     The artificial flavors and non-vanilla flavors are not disclosed on the front label or the ingredient list.

26.     The basis for this allegation is based on the ingredient list and gas-chromatography mass spectrometry ("GC-MS").

## II.     Regulations Give Hint that Natural Flavor is Not an Exclusively Vanilla Ingredient

27.     "Natural Flavors," designated as the only flavor ingredient, does not refer to an exclusively vanilla ingredient for several reasons.

---

[11] Agriculture and Markets Law ("AGM") and accompanying regulations, Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.



**INGREDIENTS:** ORGANIC SOYMILK (FILTERED WATER, ORGANIC SOYBEANS), ORGANIC CANE SUGAR, CALCIUM CARBONATE, <mark>NATURAL FLAVORS</mark>, SEA SALT, GELLAN FUM, VITAMIN A PALMITATE, VITAMIN D2, RIBOFLAVIN (VITAMIN B2) AND VITAMIN B12.

28.　Through the term "Natural Flavor," defendant reveals it is using a vanilla combination flavor – Vanilla WONF – that contains some vanilla and other non-vanilla "natural" flavors "which simulates, resembles or reinforces the characterizing flavor." See 21 C.F.R. § 101.22(i)(1)(iii) ("If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words 'with other natural flavor'").

29.　All ingredients are required to be "listed by common or usual name." S*ee* 21 C.F.R. § 101.4(a)(1).

30.　Where only vanilla is the source of a flavor, it is required to "bear[s] the name of the food specified in the definition and standard." *See* 21 U.S.C. §343(g).

31.　The common or usual name for the exclusively vanilla ingredients are "vanilla extract" and "vanilla flavoring." *See* 21 C.F.R. § 169.175 (b)(1) ("The specified name of the food

is 'Vanilla extract' or 'Extract of vanilla'"); 21 C.F.R. § 169.177 (b) ("The specified name of the food is 'Vanilla flavoring'.").

32.    "Natural Flavor" is a flavor ingredient that contains vanilla *and* non-vanilla natural flavors and has "no representation as to definition and standard of identity." *See* 21 U.S.C. § 343(i) (non-standardized flavors "may be designated as spices, flavorings, and colorings without naming each.").

33.    This terminology is consistent with the regulations for ingredient labeling. *See* 21 C.F.R. § 101.4(b)(1) ("Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of 101.22."); *see also* 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way…Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor.'").

34.    Though non-vanilla flavors on finished products "are labeled as either natural or artificial," the labeling "is different – as well as highly regulated – at the industrial level so that the end user, the processor, knows the flavor source."[12]

35.    According to Suzanne Johnson, vice president of research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

36.    The head of "taste solutions" at Irish conglomerate Kerry plc, urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

37.    A compounded vanilla ("WONF") flavor "that matches the taste of pure vanilla

---

[12] Donna Berry, Playing the natural flavor game, Food Business News, Jan. 1, 2018.

natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[13]

38.    These compounded "WONF" flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including "naturally produced vanillin," maltol and piperonal, blended together so that consumers believe what they are tasting is real vanilla.[14]

39.    The Product's front label fails to disclose these non-vanilla flavors which is deceptive, misleading and in violation of law.

III.    GC-MS Confirms Natural Flavor is Not Exclusively Vanilla and Contains Artificial Vanilla Flavoring

40.    To determine flavor composition of any food requires identifying small, volatile compounds, such as aromatics, benzenes and alcohols.

41.    Gas chromatography-mass spectrometry ("GC-MS") is a technique which can identify more than 150 compounds which comprise vanilla, but more importantly, the four "marker compounds" which are the "main vanilla flavor backbone of commercial vanilla species."[15]

---

[13] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[14] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).
[15] ThermoFisher Scientific, Gas Chromatography Mass Spectrometry (GC/MS) Information; Arun K. Sinha et al. "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and others constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 308; 299-326.

9

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

42.    The presence and amount of these compounds are "used as an indicator of quality of commercial vanilla to detect adulteration of beans and extracts."[16]

43.    The presence of artificial vanilla flavorings may be shown through "an abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation."[17]

44.    In analyzing defendant's vanilla soymilk, the sample was purged with inert gas, causing the volatile aromatic compounds to be extracted.

45.    These compounds were run through capillary columns and eluted at different times before reaching a mass spectrometer.

46.    The mass spectrum plots the compounds' elution time on the X-axis and the amount or intensity of the compounds on the Y-axis.  Exhibit "A," GC-MS Report, June 4, 2020.

---

[16] Maria del Pilar Galeas, "Gas chromatography-mass spectrometry and gas chromatography-olfactometry analysis of aroma compounds of vanilla pompona schiede," Diss. Rutgers University-Graduate School-New Brunswick, 2015 citing A.S. Ranadive, Vanilla-cultivation, curing, chemistry, technology and commercial product. In: Spices Herbs and Edible Fungi. Charalambous, G. (Ed), Developments in Food Science, Vol. 34, Elsevier Science Publishers BV, Amsterdam, The Netherlands, pp 517-577 (1994).
[17] Sinha at 319-20 ("Adulteration can be detected chromatographically by an abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation, but again the possibility is there to manipulate this profile artificially.").



Chromatogram



47. The peak assignment table identifies the compounds in column three by matching their mass-to-charge (m/z) ratio with mass spectral libraries of all known compounds.

48. Columns two (Area Integration) and four (concentration parts per million or "Conc. PPM w/w.") show the relative amounts of the detected compounds.

<u>Peak Assignment Table</u>

**Table 1**

**Sheehan & Associates, P.C., Project #7649-2**
**Simply Nature Organic Vanilla Soymilk**
**Production Code: H6 L2 61-4109**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA4017

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 10 | 48355 | formic acid | 0.5755 |
| 79 | 144946 | acetic acid | 1.7252 |
| 148 | 17533 | 1-butanol | 0.2087 |
| 195 | 16565 | pentanal | 0.1972 |
| 265 | 75410 | 1,2-propylene glycol | 0.8975 |
| 306 | 12679 | butyric acid | 0.1509 |
| 345 | 56685 | hexanal | 0.6747 |
| 416 | 55672 | lactic acid | 0.6626 |
| 547 | 130112 | hexanoic acid | 1.5486 |
| 564 | 140592 | benzaldehyde + phenol | 1.6733 |
| 584 | 31193 | 2-pentylfuran | 0.3713 |
| 593 | 19841 | 2,4-heptadienal | 0.2361 |
| 597 | 4908 | octanal | 0.0584 |
| 611 | 13341 | 2,4-heptadienal | 0.1588 |
| 628 | 7215 | 4-oxo-pentanoic acid | 0.0859 |
| 638 | 5686 | benzyl alcohol | 0.0677 |
| 649 | 7363 | N-methylpyrrolidinone (NMP) | 0.0876 |
| 654 | 10316 | heptanoic acid | 0.1228 |
| 661 | 16427 | trans-2-octenal | 0.1955 |
| 698 | 48703 | guaiacol + octyl alcohol | 0.5797 |
| 708 | 43403 | nonanal | 0.5166 |
| 728 | 433064 | maltol | 5.1544 |
| 758 | 347995 | octanoic acid + benzoic acid | 4.1419 |
| 812 | 18818 | decanal | 0.2240 |
| 822 | 84019 | naphthalene-d8 (internal standard) | 1.0000 |
| 856 | 658435 | nonanoic acid | 7.8367 |
| 903 | 126334 | 2,4-decadienal | 1.5036 |
| 926 | 167409 | 2,4-decadienal | 1.9925 |
| 935 | 85460 | N-phenyl formamide | 1.0172 |
| 949 | 559831 | decanoic acid | 6.6631 |
| 963 | 82819 | piperonal | 0.9857 |
| 973 | 73544 | 3-hydroxybenzaldehyde | 0.8753 |
| 1011 | 90029358 | vanillin | 1071.5357 |
| 1042 | 15551 | methyl paraben | 0.1851 |
| 1060 | 12527 | acetovanillone | 0.1491 |
| 1086 | 68380 | 4-hydroxy-3-methoxyacetophenone | 0.8139 |
| 1092 | 30930 | delta-decalactone | 0.3681 |
| 1117 | 33530 | lauric acid | 0.3991 |
| 1182 | 583942 | propyl paraben | 6.9501 |
| 1219 | 383273 | 4-hydroxy-3,5-dimethoxybenzaldehyde (syringaldehyde) | 4.5617 |
| 1246 | 106000 | vanillin, 1,2-propylene glycol cyclic acetal | 1.2616 |
| 1279 | 95986 | myristic acid | 1.1424 |
| 1292 | 22065 | eugenol methyl ether | 0.2626 |
| 1472 | 501920 | vanillin, glyceryl cyclic acetal | 5.9739 |
| 1491 | 228810 | vanillin, glyceryl cyclic acetal | 2.7233 |
| 1504 | 333570 | vanillin, glyceryl cyclic acetal | 3.9702 |
| 1664 | 43394 | methyl linoleate | 0.5165 |
| 1671 | 80708 | methyl oleate | 0.9606 |
| | | **Total (excluding internal standard)** | **1142.96** |

49.    Defendant's vanilla soymilk reveals vanillin (MS Scan # 1011, 1071.5357 PPM) yet fails to reveal *any* of the other marker compounds for vanilla – p-hydroxybenzaldehyde, p-hydroxybenzoic acid or vanillic acid.

50.    The Product also contains the artificial flavor maltol (MS Scan # 728, 5.1544 PPM).

*See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[18]

51.   Though maltol does not contribute a flavor of its own, it enhances vanilla by increasing a food's sweetness.

52.   While maltol has been detected in vanilla, it will be present at levels no greater than one-tenth of the amount detected, which means it was added to the "Natural Flavor."

53.   The Product also contains piperonal (heliotropine), not found in vanilla (MS Scan # 963, 0.9857 PPM). *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[19]

54.   Piperonal is "often cast in a leading role by the flavor industry" and is "somewhat reminiscent of hay and vanilla, with a distinct floral, powdery edge."[20]

55.   Accepting that the Product contains *some* vanilla, the presence of non-vanilla vanillin and maltol in a disproportionate amount relative to the presence of the non-vanillin marker compounds means these components are added in the "WONF" portion of the "Vanilla WONF" used.

56.   Though the Product appears to contain a "Vanilla WONF" flavor, the "WONF" labeling is not applicable where a product's primary characterizing flavor is vanilla, because the vanilla standards take precedence over the general flavor regulations. *See* 21 U.S.C. 343(g); *see also* 21 C.F.R. § 169.175-21 C.F.R. § 169.182 (vanilla products).

57.   The vanilla standards permit only glycerin, propylene glycol, sugar, dextrose, corn syrup or vanillin to be added to vanilla, and control how such combinations should be named. *See* 21 C.F.R. § 169.175(a)(1)-(5) (ingredients permitted for addition to vanilla extract); *see also* 21 C.F.R. § 169.180(a) (permitting "not more than 1 ounce of added vanillin" for "each unit of vanilla

---

[18] 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").
[19] 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").
[20] John Wright, Flavor Bites: Piperonal in Flavors, Perfumer & Flavorist, June 1, 2015; *see* 21 C.F.R. § 182.60.

constituent, as defined in 169.3(c)" in the combination labeled "Vanilla-vanillin extract.").

58.    The purpose of these requirements is to prevent a trace of vanilla from being spiked with artificial vanilla flavors such as vanillin.  Exhibit "B," Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized product and should therefore be labeled artificial or imitation.")

59.    According to representatives of FEMA:

The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a) (3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.

Exhibit C, John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

60.    Defendant's designation of the ingredient as "Natural Flavor" is misleading because where vanillin is added to vanilla, "the specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'." *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b).

61.    Defendant's failure to indicate "artificially flavored" on the front label is misleading because the Product contains added vanillin.

62.     A reasonable consumer cannot follow up or learn the truth that the Product contains non-vanilla artificial vanillin and "other natural flavors" from reading the Product's ingredient list because defendant labels this incorrectly as "Natural Flavor."

63.    Since the Product is made with vanillin, the label of "Vanilla Soymilk" is false and misleading because the vanillin is "not made from vanilla beans or vanilla flavors made from

vanilla beans." Exhibit D, FDA, Letter, Ferré-Hockensmith to Brownell, August 5, 2008, p. 2.

64.    Defendant's Vanilla Soymilk, "containing vanillin derived from a non vanilla bean source needs to be labeled as artificially flavored" because "the food is characterized/labeled as vanilla flavored." Exhibit E, FDA, Letter, Margaret-Hanna Emerick to Richard Brownell, February 25, 2016; *see* 21 C.F.R. § 101.22(i)(2) (requiring a food that "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor" to be labeled "artificially flavored").

65.    Even if defendant's "Natural Flavors" uses "vanillin derived naturally through fermentation," it is misleading to "imply that the vanillin is a natural flavor." Exhibit F, FDA Letter, Cataline Ferré-Hockensmith to Richard Brownell, April 19, 2005.

66.    Though a naturally derived vanillin may be designated "'natural flavor'" in the context of the general flavor regulations at 21 C.F.R. § 101.22, this is outside the context of the standardized vanilla ingredients "under sections 169.180, 169.181, and 169.182 in 21 CFR." Exhibit D, FDA, Letter, Cataline Ferré-Hockensmith, August 5, 2008, p. 2.

67.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

68.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

69.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

70.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

71.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $4.99 cartons of 64 OZ (1.89L), excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

72.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

73.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

74.    Plaintiff is a citizen of Kings County, New York.

75.    Defendant Aldi, Inc. is an Delaware corporation with a principal place of business in Elk Grove, Kane County, Illinois and therefore is a citizen of Illinois.

76.    "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

77.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, *viz*, the purchase of the Product and the misleading representations relied upon by plaintiff.

78.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

<u>Parties</u>

79.    Plaintiff Steve Gensberg is a citizen of Brooklyn, Kings County, New York.

80.    Defendant Aldi Inc. is an Illinois corporation with a principal place of business in Batavia, Illinois, Kane County.

81.     During the relevant statutes of limitations, plaintiff purchased the Product within his district and/or State for personal consumption and/or use in reliance on the representations the Product's flavor contained only vanilla flavoring from vanilla beans and did not contain artificial flavors.

82.     Plaintiff purchased the Product at the Aldi supermarket, 3785 Nostrand Ave, Brooklyn, NY 11235 in January 2018, during its normal hours of operation.

83.     Plaintiff bought the Product because he liked the product type for its intended use and expected its vanilla flavor to not be enhanced by artificial flavors, because the front label did not disclose this nor was it clarified by the ingredient list.

84.     Plaintiff would buy the Product again if assured it did not contain vanilla-enhancing ingredients in addition to vanilla and if it was labeled in a non-deceptive manner.

85.     Plaintiff is unable to rely on the Product's label in the future and he would like to do so if the Product is reformulated or the label is changed to truthfully disclose its contents.

<u>Class Allegations</u>

86.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

87.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

88.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

89.     Plaintiff is an adequate representative because his interests do not conflict with other members.

90.     No individual inquiry is necessary since the focus is only on defendant's practices

and the class is definable and ascertainable.

91.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

93.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350<br>(Consumer Protection Statutes)

94.    Plaintiff incorporates by reference all preceding paragraphs.

95.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

96.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

97.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

98.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla flavors and artificial flavors where a product is labeled "vanilla" without more.

99.    The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a trace amount of vanilla is present and the vanilla taste is from artificial flavors.

100.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

101.    Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

Negligent Misrepresentation

102.   Plaintiff incorporates by reference all preceding paragraphs.

103.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

104.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla flavors and artificial flavors where a product is labeled "vanilla" without more.

105.   The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a trace amount of vanilla is present and the vanilla taste is from artificial flavors.

106.   Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

107.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

108.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

109.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

110.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

111.   Plaintiff incorporates by reference all preceding paragraphs.

112.   The Product were manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

113.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla flavors and artificial flavors where a product is labeled "vanilla" without more.

114.   The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a trace amount of vanilla is present and the vanilla taste is from artificial flavors.

115.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

116.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

117.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

118.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

119.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

120.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

121.   Plaintiff incorporates by reference all preceding paragraphs.

122.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla flavors and artificial flavors where a product is labeled "vanilla" without more.

123.   The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a trace amount of vanilla is present and the vanilla taste is from artificial flavors.

124.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

125.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

126.   Plaintiff incorporates by reference all preceding paragraphs.

127.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   June 29, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-05745-EK-ST
United States District Court
Eastern District of New York

Steve Gensberg, individually and on behalf of all others similarly situated,

                                Plaintiff,

        - against -

Aldi, Inc.

                                Defendant

---

## First Amended Complaint

---

```
        Sheehan & Associates, P.C.
        505 Northern Blvd Ste 311
        Great Neck NY 11021-5101
             Tel: (516) 303-0552
             Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 29, 2020

                                                /s/ Spencer Sheehan
                                                Spencer Sheehan